HELANE A. SIMON, ESQ., CAB 200946

930 PALO VERDE AVE.

LONG BEACH, CA 90815

5628950770

LAWOFFICEOFHELANEASIMON@YAHOO.COM

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA,

|  |  |  |
|---|---|---|
| | ) | CASE NUMBER |
| TERRY D. LAWRENCE, Plaintiff | ) | COMPLAINT FOR: |
| V. | ) | 1.VIOLATION OF AFFORDABLE |
| ADVENTIST HEALTH MEDICAL CENTER | ) | CARE ACT §1557, 42 U.S.C. §18116 |
| TEHACHAPI, AND | ) | (DISCRIMINATION BASED ON SEX) |
| ADVENTIST HEALTH MEDICAL CENTER, | ) | 2.VIOLATION OF CALIFORNIA'S |
| BAKERSFIELD | ) | UNRUH CIVIL RIGHTS ACT, CIVIL |
| AND DOES 1-10 | ) | CODE §51 ET.SEQ.(DISCRIMINATION |
| | ) | BASED ON SEX) |
| - Defendants | ) | 3. VIOLATION OF CALIFORNIA'S |
| | | UNRUH CIVIL RIGHTS ACT, CIVIL |
| | | CODE §51 ET.SEQ. (DISCRIMINATION |
| | | BASED ON DISABILITY) |
| | | 4. VIOLATION OF CALIFORNIA |

1

GOVERNMENT CODE §11135

(DISCRIMINATION BASED ON SEX)

5.  VIOLATION OF CALIFORNIA

GOVERNMENT CODE §11135

(DISCRIMINATION BASED ON

DISABILITY)

6. VIOLATION OF CALIFORNIA

BUSINESS AND PROFESSIONS CODE

§17200 ET. SEQ.

7. VIOLATION OF CALIFORNIA

BUSINESS AND PROFESSIONS CODE

§17500 ET. SEQ.

---

Plaintiff, TERRY D. LAWRENCE (TERRY) an individual, by and through his attorney, hereby alleges as follows against Defendant ADVENTIST HEALTH MEDICAL CENTER BAKERSFIELD AND ADVENTIST HEALTH MEDICAL CENTER TEHACHAPI (Collectively "Adventist") as follows:

INTRODUCTION

1.   Plaintiff, Terry D. Lawrence is a transgender male who sought treatment on three separate occasions at Defendant Adventist Hospitals. Twice at the hospital in his home city of Tehachapi, and once in the nearby city of Bakersfield, CA

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

2.   This case is an action to secure relief for violations of rights guaranteed by the Patient Protection and Affordable Care Act (the ACA) 42 U.S.C. Section 18116 (Section 1557), California Civil Code Section s 51 et seq., also known as the Unruh Civil Rights Act (The Unruh Act), California Government Code Section 11135 (Section 11135), California Business & Professions Code Section 17200, also known as the California Unfair Competition Law (Section 17200) and California Business & Professions Code Section 17500 (Section 17500).

3.   Section 1557 of the ACA prohibits discrimination based on sex by health care providers that receive federal financial assistance. 42 U.S.C Section 18116(a); 20 U.S.C. Sections 1681(a). The Unruh Act prohibits discrimination in public accommodations in the State of California on the basis of sex (which expressly includes gender identity) and disability. Cal. Civ. Code Sections 51(b), (e)(1), (e)(5).

4.   Both statutes prohibit health care programs from discriminating against a patient based on the patient's sex, which includes gender identity. Terry experienced severe emotional distress and other damages after he was discriminated against on the basis of his sex and/or his disability while he was a patient at Adventist.

5.   Section 11135 of the California Government Code also prohibits discrimination on the basis of sex (which expressly includes gender identity) by government agencies or any entity that receives funding form the state of California. See Ca. Gov't Code Sections 11135, 1292(r)(2). Adventist's actions and omissions also constitute discrimination on the basis of sex, gender identity, and/or disability within the meaning of Section 11135 of the California Government Code.

6.   Section 17200 of the California Business & Professions Code prohibits any "unlawful, unfair or fraudulent business act or practice" as sell as any "unfair,

deceptive, untrue or misleading advertising." Cal. Bus. & Professions Code Section 17200.

7.   Section 17500 of the California Business & Professions Code prohibits, among other things, a business from making or disseminating a statement concerning professional services that is untrue or misleading and is either known or should be known to be untrue or misleading. Cal. Bus. & Prof. Code Section 17500.

8.   Despite Adventists representations in their "Gender identity and our registration process" that they "address and refer to our patients on the basis of their self-identified gender, using their pronouns and name" they did not do so at any of the Adventist visits by Plaintiff especially when they continued to refer to him as her and female in front of his 10 year old son.

9.   Despite Adventists representations in the same pamphlet that they "ensure the care, treatments and services meet the individual needs of our patients" they did not act in conformance with this claim when they insisted Plaintiff wear a wristband that identified him as female. They further did not act in conformance with their claim that "[i]nformation regarding your gender identity is part of your medical record" and that this "information is confidential and protected by law" when they placed Plaintiff's personal information on the wristband they insisted he wear in contravention of their claims and Federal laws.

10. Despite Adventists representations that they had an admissions process that was sensitive to the Transgender population and knowledge of the associated discrimination laws, they discriminated against Plaintiff when they treated him differently than they treat any other non-transgender male amount to discrimination

within the meanings of Section 1557 of the ACA, the Unruh Act, and California Government Code Section 11135.

11. Adventist's discriminatory conduct toward and treatment of Plaintiff also constitute unlawful and/or unfair business practices within the meaning of California Business and Professions Code Section 17200.

JURISDICTION AND VENUE

12. This Court has original jurisdiction over Plaintiff's claims arising under the ACA, 42 U.S.C. Section 18116, pursuant to 28 U.S.C. Section 1331

13. Plaintiff's state law claims are so related to those under which this Court has original jurisdiction that they form part of the same case and controversy. Supplemental jurisdiction is therefore appropriate over Plaintiff's remaining claims pursuant to 28 U.S.C. Section 1367

14. Venue is proper in this Court pursuant to 29 U.S.C. Section 1391(b), because the events giving rise to the claims made herein occurred in this Judicial District, and Defendants have a principal place of business within this District.

PARTIES

15. Terry Lawrence is an adult male, resident of the County of Kern, the City of Tehachapi.

16. Defendants Adventist Health are now, and was at all times mentioned herein a nonprofit healthcare organization with its principal place of business located in Tehachapi and Bakersfield California. Adventist is a business establishment that offers to the public accommodations, advantages, facilities, privileges, and services.

17. Upon reasonable information and belief, Defendant receives federal and state financial assistance such as credits, subsidies, or contracts of insurance within the meanings of Section 1557 of the ACA and Section 11135 of the California government Code. 42 U.S.C. Sections 18116(a); Cal. Gov't Code Section 11135. 42

U.S.C. Sections 18116(a); Cal.Gov't Code Section 11135. According to the Department of Health and Human Services.

18. At all relevant times, Adventist employed the services of doctors, nurses, other professional and non-professional health care providers, and staff including the nurses, other health care providers, and staff who interacted with Plaintiff in 2019 and 2020. Adventist advertised its literature that they had a sensitive and legal registration process. (See Exhibit A) They in fact do not.

GENDER IDENTITY, TRANSGENDER AND GENDER DYSPHORIA

19. Gender identity is the personal sense of one's own gender. Gender identity can correlate with a person's assigned sex or can differ from it. Gender expression typically reflects a person's gender identity, but this is not always the case. While a person may express behaviors, attitudes, and appearances consistent with a particular gender role, such expression may not necessarily reflect their gender identity. In most societies, there is a basic division between gender attributes assigned to males and females, a gender binary to which most people adhere and which includes expectations of masculinity and femininity in all aspects of sex and gender: biological sex, gender identity, and gender expression. Some people do not identify with some, or all, of the aspects of gender assigned to their biological sex; some of those people are transgender, non-binary, or genderqueer. Some societies have third gender categories. (https://en.wikipedia.org/wiki/Gender_identity)

20. Transgender people have a gender identity or gender expression that differs from the sex that they were assigned at birth. Some transgender people who desire medical assistance to transition from one sex to another identify as transsexual. Transgender, often shortened as trans, is also an umbrella term; in addition to including people whose gender identity is the opposite of their assigned sex (trans men and trans women), it may also include people who are non-binary or genderqueer.Other definitions of transgender also include people who belong to a third gender, or else conceptualize transgender people as a third gender. The term transgender may be

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

defined very broadly to include cross-dressers.

(https://en.wikipedia.org/wiki/Transgender)

21. Being transgender is distinct from sexual orientation. Transgender people may identify as heterosexual (straight), homosexual (gay or lesbian), bisexual, asexual, or otherwise, or may decline to label their sexual orientation. The opposite of transgender is cisgender, which describes persons whose gender identity matches their assigned sex. (https://en.wikipedia.org/wiki/Transgender)

22. The degree to which individuals feel genuine, authentic, and comfortable within their external appearance and accept their genuine identity has been called transgender congruence. Many transgender people experience gender dysphoria, and some seek medical treatments such as hormone replacement therapy, sex reassignment surgery, or psychotherapy. Not all transgender people desire these treatments, and some cannot undergo them for financial or medical reasons. (https://en.wikipedia.org/wiki/Transgender)

23. The Diagnostic and Statistical Manual of Mental Disorders (DSM-5) defines gender dysphoria as a marked difference between a person's gender identity and their assumed gender at birth, which persists for at least six months and manifests itself in at least two other symptoms (e.g., "a strong desire to be of the other gender," and/or "a strong desire to be treated as the other gender"). American Psychiatric Association DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 452 (5th ed. 2013). Gender dysphoria is associated with clinically significant distress or impairment in social occupational, or other important areas of functioning. Id at 453. If left untreated, this clinical distress can lead to debilitating depression and diminishment of self-esteem as well as serious incidents of self-harm, suicide attempts and suicide.

24. Medical evidence and clinical practice continue to demonstrate that family and societal rejection or disregard of a person's gender identity is harmful to that person.

25. Plaintiff Terry Lawrence is a transgender male. Transition is the process by which a person brings their outer appearance and identity into closer alignment with their gender identity or affirmed identity.

26. Despite the positive effect his transition has had on his life, Mr. Lawrence still experienced depression and gender dysphoria when he experienced societal disregard, rejection of his gender identity.

27. Once a transgender person with gender dysphoria transitions, being referred to with the wrong gender pronoun or honorific is often incredibly distressing. Such misgendering is frequently understood by a transgender person as rejection or denial of the person's identity and can significantly exacerbate gender dysphoria.

DEFENDANT'S WRONGFUL CONDUCT

28. This misgendering occurred on three separate occasions at two of Defendant's medial centers. Plaintiff was misgendered in Defendant's computer data on him, he was asked on two occasions to wear a wrist band which labeled him Female, and he was orally referred to as Female, despite correcting the agents and employees of Defendants, and in front of other employees, patients and Plaintiff's 10 year old son.

29. Defendants advertise on their websites and in "Gender identity and our admission process" pamphlet that they are sensitive to gender issues and would NOT do to Plaintiff what they in fact did on three separate occasions. (see Exhibit B, Declaration of Terry D. Lawrence)

30. On December 20, 2019 Terry walked into Adventist Health Tehachapi Valley with sore ribs for an X Rays. Upon admission he was asked for his drivers license, which has his updated gender on it. The nurse used my proper male pronoun, as I appear male in everyway.

31. Plaintiff was then taken to a curtained room in the E.R. The X-ray tech used an apron on my private area, which is typical to protect the genitals/sperm.

32. After his X-ray, a young woman came in to get insurance information. She asked Plaintiff if his wife was taken in for her X-ray. Plaintiff looked at her monitor, which

8

showed his old drivers license picture. He explained she had his old information and that he was transgender and she needed to update her information. She was very kind and updated all the information in her system.

33. Subsequently, the kind lady left and another came in and said she had to change is wristband. She proceeds to cut off Plaintiff's wristband that said M for male and put on a wristband that had F for female with three asterisks after it.

34. Plaintiff inquired as to the meaning and she went on to explain that F is for female at birth and the 3 asterisks mean transitioned to male.

35. Plaintiff was at that point extremely uncomfortable with her and this new wristband, which essentially stated he is not male, but rather "something else."

36. Plaintiff began to feel physically sick to his stomach. Tehachapi is a small conservative town. He felt he and is family were unsafe and began to feel dysphoric and angry. He wanted to leave.

37. He felt every one of the staff in the ER now knew his status as transgender. He was also outraged at what happened. A few days after this he called the Hospital Compliance line for LGBTQI people and filed a formal complaint.

A gentleman took his complaint and said someone would get back to him in approximately two weeks.  No one ever did. He then called the hospital Admissions Director who gave him a phone number to hospital staff who had nothing to do with their admissions policies or procedures for LGBTQI people. He never received a call back.

37. On 11/18/20 Plaintiff went to Defendant's emergency room with his wife and son to get checked for possible Covid. They were placed in a room with another patient. His personal health information was brought in for review.

38. He told them no, this is not correct. Despite having corrected it the year before, he was again listed as a female and given a wristband with the same label, female.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

He refused to wear the wristband. This caused considerable stress to Plaintiff, his wife and his 10-year-old son who asked his father why they kept referring to him as female.

39. He asked to speak to a supervisor and their on duty social worker was Kelly Mcbride. He explained to them again that he had legally changed all of his information in a court of law. He explained again that it is not acceptable that they insist on giving him a wristband that says female as it puts him and his family in harms way in a small conservative town.

40. It also puts him in harms way when he goes through the hospital to any necessary department X-ray, blood work or anything else. His wristband is checked and he is again "outed" to more people.

41. Plaintiff is not comfortable going to this hospital or bringing his family. This is the ONLY hospital in his area.

42. This second episode with Defendant's hospital caused considerable distress; dysphoria and psychological harm from which Plaintiff has not recovered and for which he continues have therapy

43. On 12/23/2020, Plaintiff was referred to Adventist Health of Bakersfield. When he registered he noticed on the screen they was AGAIN listed as Female. He again explained to that this needed to be changed, as it was problematic for his health and safety.

44. She tried to change the designation and went into her computer system to try to change the information and it would not allow her to update.

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

1    Plaintiff told her he had the same problem on two occasions at Adventist Hospital in

2    Tehachapi and that he really wanted this resolved. He also informed her that he

3    would not be wearing a wristband that said female.

4    Again Plaintiff felt dysphoric, angry, unseen, unrecognized, and unheard and unsafe.

5    He continues to work on this in therapy, to discuss my gender dyphoria and

6    45.   anxiety, anytime he goes into a hospital now he experiences anxiety.

7

8    FIRST CAUSE OF ACTION
     VIOLATION OF AFFORDABLE CARE ACT SECTION 1557, 42 U.S.C. SECTION 18116
9    (DISCRIMINATION BASED ON SEX)

10   46.   Plaintiff incorporates by reference each and every allegation in the foregoing

11   paragraphs of this Complaint.

12

13   47.   The Affordable Care Act (ACA) included robust antidiscrimination provisions

14   prohibiting healthcare programs receiving federal assistance from discriminating on the basis of

15   sex 42 U.S.C Section 18116

16

17   48.   Defendant is a hospital facility that receives federal funding in the form of

18   extensive federal grants for services provide to its patients. Defendant therefore meets the

19   requirement of being a "health program or activity, any part of which is receiving Federal

20   financial assistance." 42 U.S.C. Section 1811(a)

21

22   49.   The ACA's ban on sex discrimination includes discrimination against any

23   individual on the basis of sex for the purpose of providing health services The ACA provides the

24   following:

25

26       [A]n individual shall not, on the ground prohibited under . . . Title IX of the
         Education Amendments of 1972 (20 USC 1681 et seq.)…be excluded from [A]n
27       [A]n individual shall not, on the ground prohibited under title IX of the Educaiton
         Amendments of 1972 (20 USC 1681 et seq.) . . . be excluded from participation
28       in, be denied benefits of, or be subjected to discrimination under, any health

---

11

program or activity, any part of which is receiving Federal financial assistance, including credits, subsidies, or contracts of insurance, or under any program or activity that is administered by an Executive Agency or entity established under this title (or amendments). 42 U.S,C. Section 18116(a)

50.     Title IX of the Education Amendments of 1972, 20 U.S.C. Section 1681 et seq., prohibits discrimination based on sex in education programs that receive federal financial assistance.Over the past two decades, federal courts have been nearly unanimous in interpreting federal civil rights laws, including Title IX and Title VII, to prohibit discrimination against transgender people. Federal agencies similarly have interpreted federal civil rights laws to prohibit discrimination or harassment of transgender people. The regulations implementing the ACA's nondiscrimination provision mandate that covered entities must "treat individuals consistent with their gender identity …." 45 C.F.F Section 92.206.

51.     As a transgender adult, Terry Lawrence has a right under the ACA to receive health care services free from discrimination based on sex.

52.     Defendants discriminated against Plaintiff in violation of the ACA by intentionally ignoring his sex, referring to him with the wrong gender pronouns and by having a computer system that does not allow implementation of the proper gender information in their hospitals. Non-transgender individuals or individuals without a diagnosis of gender dysphoria would not have been subjected to this discrimination by Adventist. Terry Lawrence has been aggrieved by this violation of the ACA.

53.     As a result of Defendant's conduct, Terry suffers from emotional distress and anguish, embarrassment, humiliation, violation of dignity, loss of enjoyment of life, and other compensatory damages.

54.     Plaintiff seeks relief, including declaratory and injunctive relief as set forth below.

SECOND CAUSE OF ACTION
VIOLATION OF UNRUH CIVIL RIGHTS ACT, CIVIL CODE SECTION 51 et. Seq.
(Discrimination based on Sex)

55.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

56.     California Civil Code Section 51(b) et seq., also known as the Unruh Civil Rights Act, provides that all persons in the state are entitled to the "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever," regardless of sex. Under California Civil Code Section 51(e)(5) sex is expressly defined to include "a person's gender identity and gender expression."

57.     Terry is a transgender person. As such, he is within a class of person protected by California Civil Code Section 51(b).

58.     Defendant is a "business establishment" for the purposes of California Civil Code Section 51.

59.     Terry sought appropriate medical care, a service Adventist provides to the public. Defendant's conduct denied, aided, incited a denial of, discriminated, or made a distinction that denied full and equal advantages, privileges, and series to Terry based upon his sex, and therefore constituted a violation of California Civil Code Section 51 (b). Accordingly, Terry is entitled to recover a civil penalty authorized by California Civil Code Section 52(a).

60.     Adventist staff repeatedly addressed Terry as female and refused to acknowledge his sex and male gender identify.

61.     As a result, Terry was forced to leave Adventist Hospital before receiving the treatment and testing he and his family required. Terry suffered significant emotional distress and gender dysphoria as a direct result of these actions.

62.     As a direct and proximate result of Adventist's wrongful actions, Terry has and continues to suffer damages including severe emotional distress and mental anguish all in the amount to be proven at trial but exceeding the minimum jurisdiction limits of this court.

63.     Plaintiff seeks relief, including declaratory and injunctive relief as set forth below.

THIRD CAUSE OF ACTION
VIOLATION OF CALIFORNIA'S UNRUH CIVIL RIGHTS ACT, CIVIL CODE SECTION 51 ET SEQ. (DISCRIMINATION BASED ON DISABILITY)

64.     Plaintiffs incorporate by reference each and every allegation in the foregoing paragraphs of this Complaint.

65.     California Civil Code Section 51(b) et seq., also known as the Unruh Civil Rights Act, provides that all persons in the state are entitled to the "full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever," regardless of sex. Under California Civil Code Section 51(e)(5) sex is expressly defined to include "a person's gender identity and gender expression."

66.     Terry is a transgender person. As such, he is within a class of person protected by California Civil Code Section 51(b).

67.     Defendant is a "business establishment" for the purposes of California Civil Code Section 51.

68.   Plaintiff's gender dysphoria constitutes a mental disability that limits a major life activity. Cal. Gov't Code Section 12926(j), 12926.1©. This disability falls within the purview of the Unruh Civil Rights Act. Cal.Civ.Code Section 51(e)(1).

69.   Plaintiff sought appropriate medical care, a service Adventists provides to the public.

70.   Adventist's conduct violate the Unruh Civil rights Act by denying (or aiding or inciting the denial of) Plaintiff's rights to full and equal use of the accommodations, advantages, facilities, privileges, or services Adventist offers to patients by denying Plaintiff adequate care on the basis of his disability. Accordingly, he is entitled to recover a civil penalty authorized by California Civil Code Section 52(a)

71.   As a direct and proximate result of Adventist's wrongful actions, Terry continues to suffer damages, including severe emotional distress and mental anguish, all in an amount to be proven at trial but exceeding the minimum jurisdictional limits of this court.

72.   Plaintiff seeks relief, including declaratory and injunctive relief, as set forth below.

FOURTH CAUSE OF ACTION-VIOLATION OF CALIFORNIA GOVENRMENT CODE SECTION 11135 (DISCRIMINATION BASED ON SEX)

73.   Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

74.   Section 11135(a) of the California Government Code provides in pertinent part that no person in the State of California shall, on the basis of sex, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance form the state. Cal.Gov't Code section 11135(a)

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

75.   The term "sex" expressly includes discrimination based on gender identity and expression. Cal.Gov't Code Sections 11135(e), 12926®(2).

76.   California Government Code Section 11135(f) clarifies that any person who is perceived to have, or is associated with someone who has, any of the characteristics listed under Section 11135 is also protected from discrimination in state-funded programs.

77.   At all times relevant to this action, Adventist received financial assistance from the State of California. As such, Defendant is subject to the anti-discrimination provisions of Section 11135.

78.   Defendant's conduct denied Plaintiff full and equal access to the services, programs and activities offered by Defendant to patients at Adventist in violation of Civil Gov't Code Section 11135.

79.   Defendant's conduct also denied Plaintiffs wife and child who are "associated with" Plaintiff under the meaning of the statute by virtue of the fact that the are the wife and child of Terry Lawrence, a transgender person, full and equal access to the service, programs and activities offered by Defendants in violation of Section 11135. Plaintiff's wife and child have been injured as set forth in Plaintiff's Declaration.

80.   Plaintiff seeks relief, including declaratory and injunctive relief, as set forth below.

FIFTH CAUSE OF ACTION-VIOLATION OF CALIFORNIA GOVERNMENT CODE SECTION 11135 (DISCRIMINATION BASED ON DISABILITY)

81.   Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

82.     Section 11135(a) of the California Government Code provides in pertinent part that no person in the State of California shall, on the basis of sex, be unlawfully denied full and equal access to the benefits of, or be unlawfully subjected to discrimination under, any program or activity that is funded directly by the state or receives any financial assistance form the state. Cal.Gov't Code section 11135(a)

83.     The term "sex" expressly includes discrimination based on gender identity and expression. Cal.Gov't Code Sections 11135(e), 12926®(2).

84.     California Government Code Section 11135(f) clarifies that any person who is perceived to have, or is associated with someone who has, any of the characteristics listed under Section 11135 is also protected from discrimination in state-funded programs.

85.     At all times relevant to this action, Plaintiff was and is a qualified individual with a disability within the meaning of Section 11135©(1) and meets the essential requirements for the receipt of the services, programs or activities of Defendant. Cal.Gov't Code Sections 11135; 12926(j)

86      At all times relevant to this action, Adventist received financial assistance form the State of California. As such, Defendant is subject to the anti-discrimination provisions of Section 11135.

87      Defendant's conduct denied Plaintiff full and equal access to the services, programs and activities offered by Defendant to patients at Adventist in violation of Civil Gov't Code Section 11135.

88.     Defendant's conduct also denied Plaintiffs wife and child who are "associated with" Plaintiff under the meaning of the statute by virtue of the fact that the are the wife and

child of Terry Lawrence, a transgender person, full and equal access to the service, programs and activities offered by Defendants in violation of Section 11135. Plaintiff's wife and child have been injured as set forth in Plaintiff's Declaration.

89.    Plaintiff seeks relief, including declaratory and injunctive relief, as set forth below.

SIXTH CAUSE OF ACTION

VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTIONS 17200 ET SEQ

90.    Plaintiff incorporates by reference each and ever allegation in the foregoing paragraphs of this Complaint

91.    California Business and Professions Code Section 17200, also known as the California Unfair Competition Law, prohibit unfair competition in the form of any unlawful, unfair or fraudulent business act or practice.

92.    California Business and Professions Code Section 17204 allows "any person acting for the interests of itself, its members, or the general public" to prosecute a civil action for violation of the Unfair Competition law.

93.    As set forth herein, Adventist committed unlawful, unfair, and/or fraudulent business acts and practices as defined by California Business & Professions Code Section 17200, by engaging in the following acts, without limitation:

a.    Unfairly and falsely representing itself to Plaintiff and the general public as being capable of working with transgender patients and patients with gender dysphoria in violation of Cal.Bus.& Pro. Code Section 17500. Defendant made these representation through statements and information contained on its website and in its "Gender identity and our registration process" brochure.

18

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

b.　　Failing to respect the rights of patients pursuant to the Lanterman-Petris Short Act, which clarifies the rights of people with mental health conditions and provides safeguards to ensure the treatment procedures are appropriate. Cal.Welf.& Inst. Code Section 5325. These rights require that "[t]reatement should be provided in ways that are least restrictive of the personal liberty of the individual," and provide a "right to dignity, privacy, and human care," and a "right to be free from unnecessary or excessive…isolation, or abuse." Cal.Welf.& Inst. Code Section 5325.1

c.　　Failing to provide public accommodations free from discrimination based on gender identity, as required by the Unruh Civil Rights Act, California Government Code Section 11135, and the Affordable Care Act.

d.　　Failing to provide public accommodations free from discrimination based on disability, as required by the Unruh Civil Rights Act and California Government Code Section 11135.

95.　　Plaintiff sought medical care for himself and his family at Adventist because it was the only available option.

96.　　The unfair acts described above are the violations of law serve as unlawful, unfair, and/or fraudulent predicate acts and practices for purposes of California Business and Professions Code Section 17200. As a direct and proximate result of Adventists unfair acts and practices described herein, Plaintiff has suffered economic injury including but not limited to loss of money and/or property, such as medical and hospital costs, counseling fees, traveling expenses and other out of pocket expenses.

97.　　Plaintiff has also suffered injury in fact as a result of Adventists actions for which there is no adequate remedy at law. Plaintiffs is informed and believes and thereon

alleges that unless restrained by order of the Court, Adventist will continue the acts alleged above, and/or similar acts.

98. By all the foraging alleged conduct, Adventist has committed and is continuing to commit, ongoing unlawful unfair and/or fraudulent business practices within the meaning of California Business & Professions Code Section 17200 et seq.

99. As a direct and proximate result of the unfair business practices described above Plaintiff has suffered significant losses, and Defendants unjustly enriched.
Pursuant to California Business & Professions Code Section 17203, Plaintiffs are entitled to (a) restitution of money acquired by means of its unfair business practices, in amounts no yet ascertained but to be ascertained at trial; (b) injunctive relief against Defendant's continuation of its unfair business practices; and (c) a declaration that defendant's business practices are unfair within the meaning of the statutes.

100. Plaintiff has assumed the responsibility of enforcement of the laws and lawful claims specified herein. There is a financial burden incurred in pursuing this action which is in in the public interest. Therefore, reasonable attorneys fees are appropriate pursuant to California code of Civil Procedure Section 1021.5.

SEVENTH CAUSE OF ACTION
VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE SECTION 17500 ET SEQ.

101. Plaintiffs incorporate by reference each and every allegation in the foregoing paragraphs of this Complaint.

102. Adventist has engaged in false advertising by the following acts, without limitation:

20

a.   Stating on their website that "As a recipient of Federal financial assistance, Adventist Health will provide an environment for patients that is free from discrimination and will not exclude or treat people differently because of their ability to pay, age, color, creed, culture, disability, gender identity or expression, language, marital status, national origin, religion, sex, pregnancy, sexual orientation, socioeconomic status, transgender status, type of insurance, or veteran's status, when delivering care, treatment, services and benefits for inpatients and outpatients, including assignments or transfers within the facility and referrals to or from the facility directly or through contractual or other arrangements. This statement is in accordance with the provisions of Title VI of the Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, the Age Discrimination Act of 1975, and Regulations of the U.S. Department of Health and Human Services issued pursuant to these statutes at Title 45 Code of Federal Regulations Parts 80, 84, and 91"

b.   By representing in their literature entitled "Gender identity and our registration process" that they "address and refer to [their] patients on the basis of their self-identified gender, using their pronouns and name." Defendants further misrepresent in the same literature that your "information is confidential and protected by law." The same statement above is copied to this brochure.

103. Plaintiff has no choice; this is the only hospital where he lives with his family. Plaintiff is informed and believes and alleges that Adventist intended to sell services by engaging in advertising that was untrue or misleading, and which Adventist knew or should have known was untrue or misleading, concerning its ability to sensitively treat and provide services to transgender persons.

21

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS

104. As a direct and proximate result of Adventists unfair acts and practices described herein, Plaintiff has suffered economic injury, including but not limited to the loss of money and/or property, such as medical and hospital costs, counseling fees, travel expenses and other out of pocket expenses.

105. Adventist's false advertising is ongoing and presents a threat to member of the generalpublic seeking appropriate medical treatment options in the Adventist has failed to publicly acknowledge e the wrongfulness of its actions, implement institutional changes to prevent problems from recurring and otherwise provide the complete relief required by statute.

106. Adventists acts and practices as alleged herein constitute acts of false advertising within the meaning of California Business and Professions Code Section 12500 et. Seq.

107. Plaintiff is entitled to restitution of all monies paid to Adventist as a result of Defendant's false advertising and to injunctive relief under California Business and Professions Code Section 17535 to prevent continue false advertising by Defendant.

108. Plaintiff sees relief, including declaratory and injunctive relief, as set forth below:

PRAYER

WHEREFORE, Plaintiff prays for judgment as follows:

Compensatory damages and restitution in an amount to be determined at trial, plus interest accruing between December 20, 2019, and the date of judgment;

For injunctive relief, according to proof;

For punitive damages according to proof, but not less than $500,000.00

For Attorney fees, statutory costs and expenses;

For judgment in favor of Plaintiff and against Defendants on all causes of action; ad

For such further relief as the Court may deme just and proper.

DEMAND FOR JURY TRIAL

Plaintiff Terry Lawrence, and individual, hereby demands a jury trial.

Dated-November 19, 2021          LAW OFFICE OF HELANE A. SIMON

                                   /S/Helane A. Simon

                                   Attorney for Plaintiff Terry D. Lawrence

COMPLAINT FOR CIVIL RIGHTS VIOLATIONS